Filed 7/30/13  P. v. Tillman CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>EDDIE TILLMAN,<br><br>        Defendant and Appellant. | A135107<br><br>(Contra Costa County<br>Super. Ct. No. 5111608-6) |

## INTRODUCTION

Defendant Eddie Tillman appeals from a conviction, following a jury trial, of petty theft with a prior.  (Pen. Code, §§ 484, 666.)[1]  He maintains the trial court erred in denying his request for self-representation.  He also claims the court erred in not committing him to the California Rehabilitation Center.  We conclude the trial court improperly denied defendant's *Faretta*[2] motion, and therefore reverse the judgment.[3]

## FACTUAL AND PROCEDURAL BACKGROUND

On August 27, 2010, FoodMaxx loss prevention officer Paul Martinez stopped defendant near the exit of the Antioch store after watching defendant place three packages of meat into a bag and walk toward the exit.  Martinez and another employee asked to see defendant's receipt, which he could not produce.  Martinez then called police, who collected store surveillance footage, searched and arrested defendant, and

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

[2]  *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).

[3]  Given our conclusion, we need not, and do not, reach the sentencing error issue.

1

wrote a report. The Contra Costa County District Attorney filed an information charging defendant with one count of petty theft with a prior theft conviction (§§ 484, 666), and alleging five prior strikes (§§ 667, subds. (b)–(i), 1170.12), one prior term commitment (§ 667.5, subd. (b)), and probation ineligibility (§ 1203, subd. (e)(4)). Defendant pleaded not guilty, and a preliminary hearing was scheduled for November 16, 2010.

After a series of continuances delayed the preliminary hearing six months, defendant declared he wished to hire private counsel. On September 6, 2011, after additional continuances, defendant was provided with a *Faretta* form.

At a hearing on September 20, defendant submitted the completed form, which he had filled out, initialed, signed, and dated. The court then asked defendant if he wished to represent himself; defendant replied, "[y]es, sir." When the court asked why, defendant responded he could "do a better job than anyone else." The court then proceeded to confirm on the record that defendant understood the procedural due process rights he had, as he had indicated by initialing the boxes relating to them on the *Faretta* form, including his rights to representation and to waive a lawyer and represent himself. The court next asked defendant if he understood that if he chose to represent himself, "you're all that you've got, and you're going to be handling the case completely from beginning to end . . . ," to which defendant responded "[y]es, sir."

The court then asked defendant about his education. Defendant responded he had a GED, and had "worked in [a] law library for . . . five years." The court then extensively advised defendant concerning the "many dangers and disadvantage[s] of representing [him]self," and that the choice was unwise, to which defendant responded he understood. Subsequently, the court asked defendant which charges he faced, to which he correctly responded "[s]econd degree burglary[4] and petty theft," although he had not written the petty theft charge on the correct page of the form. The court instructed defendant to add the charge, as well as the maximum sentence for his charges, on the form in red ink; defendant had incorrectly stated the maximum sentence for his crimes on the form, and

---

**4** By the time of the hearing, defendant faced a second charge of burglary. Defendant represents this charge was "later severed," although the record is unclear.

2

corrected it to "25 [years] to life." When asked if he understood the maximum sentence "on each case" to be "25 years to life, not one to three years," defendant responded, "I know now, yes."

Defendant had also checked a box on the form indicating he knew whether the charged crimes required general or specific intent. The court took the opportunity to test defendant's legal knowledge, asking him which of the crimes was a general intent crime. Defendant replied, "[e]ach of them is a general." The court instructed defense counsel to explain the difference between general and specific intent crimes, then explained the difference again to defendant. Defendant said he understood the explanation, and when asked "what, specifically, do you think has to be proved?" responded, "[t]hat I knew what I was doing when I entered the building." The court then asked defendant about his knowledge of legal defenses, and explained the concept.

Afterward, the court again advised defendant on the disadvantages of self-representation, and asked if it was "still your desire to be granted permission by the Court to proceed to represent yourself. You understand that by making this request, you're asking to give up your right to be represented by a lawyer. [¶] Is all that true?" Defendant replied "[y]es," to which the court replied by asking, "[s]o, everything I've said to you, and everything we've discussed doesn't change your request to represent yourself." Defendant responded, "[n]o."

The court then stated, "[o]kay, I've carefully listened to everything you've told me. I've read the form very carefully," and proceeded to deny defendant's *Faretta* motion. It identified several reasons for doing so: "[f]irst, in my opinion, you do not really understand fully what you've been charged with. [¶] And more importantly . . . you don't understand the consequences of a conviction here. [¶] . . . [¶] . . . I don't think you're equipped with the required . . . legal knowledge to do this." The court then scheduled a preliminary hearing for October 11, 2011; 21 days later. Trial was scheduled for December 12, 2011, but after several more continuances, commenced on January 17, 2012. A jury found defendant guilty of count 1, petty theft with a prior conviction (§§ 484, 666), and found true the prior conviction allegations.

3

" 'A trial court must grant a defendant's request for self-representation if three conditions are met. First, the defendant must be mentally competent, and must make his request knowingly and intelligently, having been apprised of the dangers of self-representation. [Citations.] Second, he must make his request unequivocally. [Citations.] Third, he must make his request within a reasonable time before trial. [Citations.]' [Citation.]" (*People v. Stanley* (2006) 39 Cal.4th 913, 931–932; see also *Faretta, supra,* 422 U.S. at p. 807 ["[A] defendant in a state criminal trial has a constitutional right to proceed *without* counsel when he voluntarily and intelligently elects to do so."].) "If a request for self-representation is unequivocally asserted within a reasonable time before the commencement of the trial, and if the assertion is voluntarily made with an appreciation of the risks involved, the trial court has no discretion to deny it." (*People v. Bloom* (1989) 48 Cal.3d 1194, 1219.) The erroneous denial of a timely motion for self-representation is a structural error of constitutional magnitude that is subject to the rule of per se reversal. (*People v. Butler* (2009) 47 Cal.4th 814, 824, citing *McKaskle v. Wiggins* (1984) 465 U.S. 168, 177, fn. 8.)

Here, the record is clear all three conditions requiring a grant of defendant's request for self-representation were present and the trial court plainly erred in denying his *Faretta* motion. Indeed, the only issue on appeal is whether defendant's request to represent himself was knowingly and intelligently made. The Attorney General does not dispute his request was unequivocal and timely.

The trial court summed up its denial of defendant's *Faretta* motion as follows: "First, in my opinion, you do not really understand fully what you've been charged with. And more importantly . . . you don't understand the consequences of a conviction here. [¶] . . . [¶] . . . I don't think you're equipped with the required . . . legal knowledge to do this." The court reached this conclusion after essentially cross-examining defendant on his knowledge of the law, as we have set forth above.

A defendant need not demonstrate legal knowledge, however, in order to knowingly and intelligently waive the right to counsel. As the Supreme Court observed

in *Faretta*:  "We need make no assessment of how well or poorly Faretta had mastered the intricacies of the hearsay rule and the California code provisions that govern challenges of potential jurors on *voir dire*.  For his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself."  (*Faretta, supra,* 422 U.S. at p. 836, fn. omitted.)  "One need not pass a 'mini-bar examination' in order to exhibit the requisite capacity to make a valid *Faretta* waiver."  *People v. Joseph* (1983) 34 Cal.3d 936, 943; see also *Hirschfield v. Payne* (9th Cir. 2005) 420 F.3d 922 [defendant's lack of legal knowledge improper basis to deny self-representation].)

The instant case is not materially different than *People v. Silfa* (2001) 88 Cal.App.4th 1311, in which the trial court examined the defendant as to his knowledge of the elements of the crimes with which he was charged, the maximum possible punishment, the requisite standard of intent, the admissibility of prior convictions, and his ability to conduct voir dire and prepare jury instructions, among other things.  (*Id.* at pp. 1315–1321.)  Because the defendant was not conversant with the law, the court found that while he was mentally competent and fully informed of his right to counsel, he did not understand "the consequences" of self-representation and thus did not intelligently and voluntarily waive his right to counsel.  (*Id.* at p. 1321.)  The Court of Appeal reversed.  Once it was determined defendant was mentally competent and fully informed of his right to counsel, and he had "demonstrated that he was literate and understood the dangers of self-representation," "[n]othing more was required of him in order to exercise his right of self-representation."  (*Id.* at p. 1322.)  " '[T]he trial court may not ascertain a defendant's competence to waive counsel by evaluating the *ability* to represent himself or herself.' "  (*Id.* at p. 1323, quoting *People v. Welch* (1999) 20 Cal.4th 701, 733–734.)

As did the court in *Silfa*, we must conclude the trial court erred in denying defendant's request to represent himself on the ground he was not "equipped with the required . . . legal knowledge to do this."

Relying on *People v. Tena* (2007) 156 Cal.App.4th 598, the Attorney General contends the judgment can be affirmed on the ground defendant subsequently abandoned

his desire to represent himself. The defendant in that case subsequently retained private counsel, thus taking affirmative action indicating abandonment of his desire to represent himself. Mere failure to continue protesting the denial of a *Faretta* motion, however, which is all the record reflects here, does not indicate abandonment of the desire for self-representation. (See *People v. Dent* (2003) 30 Cal.4th 213, 219 [" 'To avoid a waiver of a previously-invoked right to self-representation, a defendant is not required continually to renew a request once it is conclusively denied or to "make fruitless motions or forego cooperation with defense counsel in order to preserve the issue on appeal." ' "], quoting *Orazio v. Dugger* (11th Cir. 1989) 876 F.2d 1508, 1512.) In fact, it would constitute inappropriate and disruptive behavior if a defendant continually quarreled with a *Faretta* ruling or continually made new *Faretta* motions. The trial court unequivocally denied defendant's request to represent himself, and it is to his credit that he did not continually contest that plainly erroneous ruling.

**DISPOSITION**

The judgment is reversed.

_____
Banke, J.

We concur:

_____
Margulies, Acting P. J.

_____
Sepulveda, J.*

_____

* Retired Associate Justice of the Court of Appeal, First Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

6